# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| DENNIS THOMAS MURPHY III, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CV407-166 |
| MEDICAL DEPARTMENT<br>*Chatham County Jail*, | ) ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, now an inmate at Coastal State Prison, has filed a complaint pursuant to 42 U.S.C. § 1983 against the "medical department" of the Chatham County Jail alleging he was denied necessary medical care for a serious injury. (Doc. 1.) The Prison Litigation Reform Act requires the federal courts to conduct early screening of all prisoner suits against governmental entities or officials for the purpose of identifying claims that are subject to immediate dismissal as frivolous, malicious, or legally insufficient. 28 U.S.C. § 1915A (courts must identify "cognizable claims" filed by prisoners or other detainees and dismiss claims which are

frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief); see also 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four grounds provided by § 1915A as to any prisoner suit brought "with respect to prison conditions"). The Court will therefore examine plaintiff's complaint to determine whether he has stated a colorable claim for relief under § 1983.

## I. BACKGROUND

Plaintiff asserts that he was denied necessary medical care for a serious injury to his left knee. (Doc. 1 at 5.) He asks the Court to award him the following damages: (1) $5,000 per day for every day he suffered with pain, (2) $15,000 for each doctor that told him there was nothing wrong with his knee, (3) $50,000 for emotional distress, and (4) $250,000 for the damage done to his knee from the alleged failure in treatment. (Id. at 8.)

At the time of the injury, March 14, 2007, plaintiff was a mental health inmate in the Chatham County Jail. (Id. at 4.) He states that he injured himself when he "kick[ed] at a person that was not there." (Id.

2

at 5.) After he "came down" his left leg was "swollen from [his] knee to his foot." (Id.) He states that he "could not walk or stand . . . or sit down" after the injury. (Id.) He sought medical assistance but alleges that he was refused treatment for two days. (Id.) On March 16, 2007, plaintiff was seen by "M.D. Voronica," who told him that the injury was merely a sprain. (Id.) She gave him a crutch, "some ben-Gay and a leg wrap for two weeks." (Id.) Unhappy with this outcome, plaintiff filed a grievance demanding that the medical staff x-ray his swollen knee. (Id.) The knee was x-rayed at the jail's medical facility, but it "could not see through the [swelling]." (Id.) Dr. Voronica ordered another x-ray which was taken at Memorial Hospital on May 17, 2007. (Id.) At his follow-up appointment with Dr. Voronica, she told him that there was "nothing wrong with [his] knee." (Id. at 5-6.)

Plaintiff took exception to this diagnosis. He insists that his "knee is fractured" and that he has a "bone bruise [and] a tear in [his] ACL." (Id.) In support of this apparent self-diagnosis, plaintiff states that he overheard one of the Memorial Hospital x-ray technicians say that his "knee is fractured." (Id. at 5) Additionally, plaintiff states that Dr.

Voronica at some point consulted with Dr. Anthony Wade, who told her that plaintiff "need[ed] to see a bone doctor to see what [he] tore up in [his] knee." (Id. at 6.) Wade's instructions apparently went unheeded.

After Dr. Voronica's diagnosis, plaintiff filed several grievances and medical request forms, but he was not treated again until late August. (Id.) He alleges that he remained in extreme pain and the pain drove him to violence. (Id.) Apparently in response to these violent outbursts, Nurse Simmons gave plaintiff some Tylenol and Ben-Gay to relieve the pain on August 29, 2007, but she refused to permit him to see a doctor. (Id.) Consequently, plaintiff continued flooding the jail staff with grievances and medical request forms. (Id.) Plaintiff was finally seen by another doctor on October 2, 2007. (Id.) She allegedly refused to tell plaintiff her name. (Id.) Like Dr. Voronica, she told him that there was nothing wrong with his left knee. (Id.)

Plaintiff began to suspect that the medical department was conspiring to deny him treatment. (Id.) Accordingly, he filed yet another grievance, which resulted in a consultation with Dr. Adebisi on October 8, 2007. (Id.) Dr. Adebisi could not locate the prior x-rays in plaintiff's

medical file, so he ordered new x-rays. (Id. at 7.) The x-rays were taken at Memorial Hospital on October 15, 2007. (Id.) Once Dr. Adebisi reviewed the x-ray images, he prescribed plaintiff Tylenol for two weeks. (Id.) Plaintiff claims that he is still experiencing pain. (Id.)

## II. ANALYSIS

### A. "Medical Department" Not a Proper Defendant

Plaintiff names the "medical department" as the sole defendant. (Id. at 1.) The jail's medical department, however, is not an entity that is subject to suit under § 1983. Harris v. Matar, 1995 WL 9247, at *1 (N.D. Ill. 1995) (department of corrections medical staff is "neither a person nor an entity subject to suit because of a lack of legal existence"); Ferguson v. Morgan, 1991 WL 115759, at *1 (S.D.N.Y. 1991) (correctional facility medical staff not a person under § 1983); see Lovelace v. DeKalb Central Prob., 144 F. App'x 793, 795 (11th Cir. 2005); Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (sheriff and police departments not usually considered legal entities subject to suit). As plaintiff names no other defendants, the complaint should be dismissed. Furthermore, even

5

if plaintiff were to name the individual members of the jail's medical staff referenced in the body of his complaint as defendants, the claim still fails on the merits.

## B. Plaintiff's Negligence Claim is Not Cognizable under § 1983

Plaintiff insists that his left "knee is fractured," that he has a "bone bruise[, and] a tear in [his] ACL," and that the jail's medical staff has neglected to provide him appropriate medical treatment for his injury. (Doc. 1 at 5-6.)[1] The facts set forth by plaintiff in his complaint describe, at most, a claim of medical negligence or malpractice, not a claim of "deliberate indifference" sufficient to establish liability under § 1983.

---

[1] It is not clear whether plaintiff was a pretrial detainee or a convicted inmate awaiting assignment to a state prison at the time of the events alleged in his complaint. Plaintiff's custodial status is of no significance to the Court's analysis, however, for it is well settled that "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner." Lancaster v. Moore County, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); Hamm v. DeKalb County, 774 F.2d 1567, 1572-74 (11th Cir. 1985) ("states may not impose on pretrial detainees conditions that would violate a convicted prisoner's eighth amendment rights."). Both detainees and prisoners have a constitutional right to medical care, and whether that right derives from the Fourteenth Amendment's due process clause or the Eighth Amendment's proscription of "cruel and unusual punishments," a prison or jail official who exhibits "deliberate indifference" to the "serious" medical needs of a detainee or prisoner is subject to liability under § 1983. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Because the Fourteenth Amendment guarantees detainees the same level of protection provided by the Eighth Amendment for convicted persons, Hamm, 774 F.2d at 1574, the Court will look to the jurisprudence in both types of cases in evaluating plaintiff's § 1983 claim.

"[I]t is obdurancy and wantonness, not inadvertence or error in good faith," that violates the Constitution in "supplying medical needs." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Thus, it is not enough that prison medical personnel have been negligent in diagnosing or treating a prisoner's condition, since it is clear that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). In fact, care provided to a prisoner need not be "perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980)).

Plaintiff readily admits that he has been treated numerous times by the prison doctors and medical staff for his knee injury, has received repeated x-rays, and was even transported to a local hospital for additional diagnostic testing. It is well settled that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). A prisoner's mere disagreement with a jail's medical

personnel about the proper course of treatment does not entitle him to § 1983 relief. "[T]he question of whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classical example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams, 61 F.3d at 1545 (quoting Estelle, 429 U.S. at 107); Waldrop, 871 F.2d at 1033 (no recovery under § 1983 for disagreements between patient and doctor about what is medically necessary or justifiable). A § 1983 claim, therefore, "does not lie if a prisoner's complaint is directed at the wisdom or quality of the medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice." Brinton v. Gaffney, 554 F. Supp. 388, 389 (E.D. Pa. 1983). Indeed, "even gross negligence" is insufficient to establish liability under § 1983. Miller v. King, 384 F.3d 1248, 1251 (11th Cir. 2004).

It is clear from plaintiff's complaint that he is unhappy with the medical care he received at the Chatham County Jail and that he disagrees with both the diagnosis and the course of treatment provided by the jail's physicians. But plaintiff's dissatisfaction or disagreement

with the medical opinion of the jail's physicians or nurses is not enough to state a claim for relief for the denial of his *constitutional* rights. If plaintiff has been misdiagnosed or otherwise treated in a manner that falls below the standard of care required of medical professionals, then he has an appropriate remedy in the state courts for medical malpractice. But it is apparent from the face of his complaint that he has not been the subject of "deliberate indifference" by any member of the jail's medical staff. Thus, his § 1983 complaint is subject to dismissal for failure to state a claim for relief.

## III. CONCLUSION

For all of the above reasons, plaintiff's complaint should be **DISMISSED**.

**SO REPORTED AND RECOMMENDED** this 14th day of January, 2008.

UNITED STATES MAGISTRATE JUDGE<br>
SOUTHERN DISTRICT OF GEORGIA